## JAMES BOYER v. JOHN BOYER, ET AL.

**Decedents' Estates—Advancements.**

> Where a father, who has land that is sold for taxes, gives such land to a son on condition that he redeem it, the son is chargeable for the value of the land, less costs of redemption, as an advancement, the value of such land being ascertained as of the date of the gift.

### APPEAL FROM HENRY CIRCUIT COURT.

#### January 12, 1877.

OPINION BY JUDGE COFER:

The testimony of the appellant that his father told him that if he would go to Indiana and redeem the land he might have it, is direct and positive. No other witness professes to know what the agreement was. John Boyer, it is true, says that the understanding was that appellant was to redeem for his father, but he says he did not hear what passed between them, and that appellant never told him on what terms or for whom he was to or had procured the title from Crawford, except that it was all right and safe. Appellant also

says that the money paid to Crawford and in defraying his own expenses to and from Indiana was his own, and not his father's, and he is again uncontradicted except by the statement of John that he negotiated a loan of $100 for his father, and his statement that his father furnished appellant with $175, at the time he went to redeem the land. John does not know what the arrangement was between the appellant and his father in regard to the loan, or that the old gentleman furnished appellant with any money, or who repaid the borrowed money to Antle. All he knows on these subjects is from hearsay and inference.

The appellant is contradicted in some of his statements by some of the evidence of the declarations of his father, but if these are to be treated as evidence, then the appellant is very strongly corroborated by evidence of contrary statements made by the old man. He is also corroborated by the fact that the father certainly knew as early as 1852, if not earlier, that the appellant had taken a deed to himself. No witness proves that the old man ever complained to the appellant that he had taken the deed from Crawford to himself, or that he ever afterward, in the appellant's presence, claimed the land, or that he ever complained to any one of what the appellant had done: he never afterwards listed the land for taxation nor paid the taxes on it; he does not appear to have had an agent or to have gone or sent any one to look after the land, nor is he shown to have claimed it except on a few occasions, while he, or many more occasions, and according to the evidence, in a much more distinct and emphatic manner, declared that the land belonged to the appellant. And when in 1866 the appellant sold the land, he is not shown to have claimed any interest in it, but on the contrary, at appellant's request, made a quitclaim deed to his vendees, without, so far as appears, making any claim to the purchase money or any part of it. It is not shown, or even claimed, that he was not both capable and willing to assert his rights, or that his silence from 1849 to 1866 was procured by any arts or unfair practices on the part of the appellant. During that long period of time he talked with many persons in regard to the land; many of the witnesses say he spoke of it as belonging to the appellant, and all parties admit that as early as 1852, he knew the appellant had Crawford's deed for the land; yet no witness makes any mention of his having complained of that fact, or of his having concerned himself in any way in looking after the land or in paying taxes on it.

In view of all these facts we conclude without hesitation that the

appellant's version of the facts is the true one, and that it was his father's intention that he should take the title to himself, and should thenceforward own the land, and that so far as Crawford's deed, made with the consent of Jacob Boyer, could confer title, the appellant was the owner of the land from the date of that deed.

It is contended, however, that the tax deed to Crawford was void, and that consequently his deed passed nothing to the appellant, and therefore the title remained in Jacob Boyer until he conveyed to Rains & Wilson in 1866. An advancement is to be charged at its value at the time when it is made effectual by conveyance of the title, and the appellant is chargeable with the value of the land at the date of the deed to Rains & Wilson. The general rule, undoubtedly, is that an article of property advanced by a descendant is to be charged at its value when the gift becomes irrevocable and the right of enjoyment begins under it. But we think in any view of this case the most that can be charged to the appellant for the land in question is its value at the date of Crawford's deed to him, less the amount expended to obtain that deed. For, conceding that Crawford's purchase was void, it would not follow that his deed to the appellant made, as we have decided, with Jacob Boyer's consent, was also void. Jacob Boyer had a right to waive any irregularities in the proceedings which resulted in the sale of the land for taxes, and we think his conduct, if not amounting to a technical estoppel, is evidence of a waiver of any right he may have had to treat the sale as void, and of his purpose to allow it to stand.

It is contended, on the other hand, that the tax deed was void, and that the land is to be treated as having been purchased by the appellant of Crawford, and that it was in no sense an advancement. In that we do not concur. The evidence shows that, at the date of Crawford's deed to the appellant the land was worth from four to five dollars per acre, amounting from $1,500 to $1,800. The amount paid to Crawford for it was only $100. It cannot, therefore, be supposed that Crawford had a valid title and meant to rely upon it, and to refuse to permit the land to be redeemed. Men do not usually part with property at such an inadequate price when they can legally and believe they may rightfully hold it as their own.

Crawford, no doubt, either suspected the validity of his title, or felt that it would be unjust to keep the land at the merely nominal sum paid for it, and conveyed it to the appellant because he was the son of the former owner and had his father's consent to receive the title. The appellant says he went because his father told him if he

17

would redeem it he might have the land, and no doubt he so informed Crawford, and Crawford no doubt conveyed to him because he believed the title to be defective or because he was willing that it might be redeemed by Jacob Boyer or one representing him, notwithstanding the time for redemption had expired. Upon the assumption that the title was valid, it was doubtless the fact that the appellant had his father's consent to redeem that enabled him to do so, and that consent was worth to him the difference between the then value of the land and what it cost him, and he should account for that sum as an advancement.

We think the evidence shows that the price paid Crawford and the expenses of the trip amounted to $150, and that the land was then worth $1,800, and that the appellant should therefore be charged with the sum of $1,650 on that account.

Judgment *reversed* and cause remanded for further proceedings in conformity to this opinion.

*William Carroll, Webb & Barbour,* for appellant.

*W. Montford, R. W. Masterson, Caldwell & Harwood,* for appellees.